LEWIS KING *vs.* CHARLES C. YOUNG.

Hancock.   Opinion March 4, 1884.

*Practice.   Deed.   Trespass.   Mussel-bed.   Island.   Flats.*

It is within the discretionary powers of the court to permit a party who has introduced a deed in evidence to withdraw it.

A deed bounded the land conveyed as follows: "Beginning . . . on the bank of Jordan's river; thence running east three hundred and twenty rods; thence south fifty rods; thence west three hundred and twenty rods to Jordan's river; thence northerly by Jordan's river to the first mentioned bounds. *Held,* that the land conveyed extended to low-water mark.

A mussel-bed over which the water flows at every tide is not an island. Such formations are included in what are called flats, and, if within tide waters and within one hundred rods of shore at high water, belong to the owner of the adjoining land, if no water flows between them and the shore when the tide is out.

The owner of the adjoining land can maintain trespass *qu. cl.* against one who enters upon the flats and takes and carries away mussel-bed manure.

ON EXCEPTIONS.

This was an action of trespass *quare clausum fregit* for entering plaintiff's close on the east side of Jordan's river in Lamoine and carrying away mussel-bed manure. The plea was the general issue and a brief statement denying the plaintiff's title and alleging title in the state. The *locus* was a mussel-bed in front of the plaintiff's upland. The verdict was for the plaintiff and the defendant alleged exceptions which are sufficiently indicated in the opinion.

*A. P. Wiswell,* for the plaintiff, cited: Anc. Chart. 148 ; *Lapish* v. *Bangor Bank,* 8 Maine, 85 ; *Montgomery* v. *Reed,* 69 Maine, 510 ; *Commonwealth* v. *Alger,* 7 Cush. 53 ; *Mayhew* v. *Norton,* 17 Pick. 357 ; *Green* v. *Chelsea,* 24 Pick. 77 ; *Jackson* v. *B. & W. R. R. Co.* 1 Cush. 575 ; *Saltonstall* v. *Long Wharf,* 7 Cush. 200 ; *Harlow* v. *Fisk,* 12 Cush. 302 ; *Moore,* v. *Griffin,* 22 Maine, 350 ; *Storer* v. *Freeman,* 6 Mass. 439 ; *Partridge* v. *Luce,* 36 Maine, 16 ; *Pike* v. *Munroe,* 36 Maine,

309; *Erskine* v. *Moulton*, 66 Maine, 280, Angell, Tide Waters, 68, 69, 71, 72; 2 Black. Com. 26; Tyler, Law of Boundaries, c. 7; Wash. Real Pro. 55; *Emans* v. *Turnbull*, 2 Johnson, 313; *King* v. *Yarborough*, 3 Barn. and Cress. 91; *Adams* v. *Frothingham*, 3 Mass. 352.

*Hale and Emery*, for the defendant.

In the plaintiff's deed the grantor fixes the starting point "on the bank" and his words cannot be enlarged by the court to include land below the bank. The language of this deed does not include below the bank, or high-water mark. *Storer* v. *Freeman*, 6 Mass. 439; *Lapish* v. *Bank*, 8 Maine, 85; *Nickerson* v. *Crawford*, 16 Maine, 245; *Lincoln* v. *Wilder*, 29 Maine, 178.

The mussel-bed must have been an island when it first appeared above the surface. To whom did it then belong? We say the state. The ordinance of 1647 does not affect the question. That ordinance only conveyed to low-water mark which in this state is ordinary low-water mark. *Gerrish* v. *Union Wharf Co.* 26 Maine, 384. This new formation was below and outside of ordinary low-water mark. The ordinance cannot cross that boundary to reach a larger channel beyond. *Sparhawk* v. *Bullard*, 1 Met. 107; *Ashby* v. *Eastern R. R.* 5 Met. 370; *Walker* v. *B. & M. R. R. Co.* 3 Cush. 22; *Att'y General* v. *Boston Wharf Co.* 12 Gray, 553.

The ownership of this new island depends on the common law by which it seems clear that all new islands forming in the sea belong to the state. 2 Black. Com. 261, 262; Schultes, Aqua. Rights, 115, 138; Hale, *De Jure Maris*, c. 4; *Martin* v. *Waddell*, 16 Pet. 367; Hargrave, Law Tracts, 15; *Benson*, v. *Morrow*, 61 Mo. 345.

The accretion after the formation of the island was to it and not to the plaintiff's land. The well defined channel which at first existed between the mussel-bed and the shore at low water was closed by accretions to the island. All the authorities agree that the title to the accretion is in him who has the title to that to which the accretion appertains, to which it attaches.

In every case where the increment has been adjudged to the adjoining riparian owner it was found as a matter of fact that the increment began on the plaintiff's land and increased from there out by imperceptible degrees. *Morris* v. *Browne*, 25 Alb. Law. J. 98; *Benson* v. *Morrow*, 61 Mo. 345; *Halsey* v. *McCormick*, 18 N. Y. 147; *Saulet* v. *Sheppard*, 4 Wall. 507; *Jones* v. *Johnston*, 18 How. 150; *Deerfield* v. *Arms*, 17 Pick. 41; *St. Clair* v. *Livingston*, 23 Wall. 46; *Boorman* v. *Sunnuchs*, 42 Wis. 235.

As against the king or the state the doctrine is rarely applied, and if at all only on the ground that it cannot be ascertained that the sea formerly covered the soil in dispute. See Hale, *De Jure Maris*, 14; *Att'y General* v. *Rees*, 4 DeGex & Jones, 55.

WALTON, J. This is an action of trespass *quare clausum fregit*. The contention is in relation to the ownership of a mussel-bed in Jordan's River in the town of Lamoine; and the case is before the law court on exceptions.

1. The plaintiff having introduced in evidence a deed, was afterward allowed to withdraw it, the defendant objecting. We think it was within the discretionary powers of the court to allow the deed to be withdrawn; and it is familiar law that to the exercise of a discretionary power exceptions do not lie.

2. The plaintiff claimed title through a deed which bounded the land conveyed as follows: Beginning, "on the bank of Jordan's River, thence running east three hundred and twenty rods; thence south fifty rods; thence west three hundred and twenty rods to Jordan's River; thence northerly, *by Jordan's River*, to the first mentioned bound." The presiding judge ruled that the land conveyed extended to low water mark. The ruling was undoubtedly correct, Jordan's River being an arm of the sea in which the tide ebbed and flowed; and there being no claim that low water mark was more than a hundred rods distant from high water mark; the ordnance of 1641-7 declaring that in all creeks, coves and other places about and upon salt water, where the sea ebbs and flows, the proprietor, or the land adjoining, shall have propriety to the low water mark, where the sea

doth not ebb above a hundred rods and not more wheresoever it ebbs further. And see *Erskine* v. *Moulton,* 66 Maine, 280.

3. As already stated, the contention was in relation to the title of a mussel-bed which had formed in Jordan's River in front of the plaintiff's land, and which by its growth, had finally reached and become attached to the shore. Upon this point the presiding judge instructed the jury that if by natural causes the bed of the river commenced and continued to be raised, or the water commenced and continued to recede, so that by these natural causes, there was an accretion of soil that came above the surface of the water at ordinary low water, and continued to increase until the accretion connected with the plaintiff's shore, so that there ceased to be any channel or sheet of water between such accretion and the shore at ordinary low water, then the accretion would belong to the plaintiff, notwithstanding the highest portion of it was first raised above the surface of the water some distance from the shore; and the judge added that by natural causes he meant the action of the water in washing up gravel, sand, or soil, or the action of the mussel.

We think this ruling was correct. It seems to be settled both in England and in this country that the land of a riparian proprietor may be increased by accretion. This is not denied by the defendant's counsel. But he contends that the increase must be gradual, and from the shore outward; that if an island forms at a distance from the shore, and then, by its own growth, extends inward till it reaches the shore, such new made land will not become the property of the owner of the shore; and in this we think he is correct. He then contends that a mussel-bed is an island, if it first commences to form at a distance from the shore, and there first shows itself above the surface of the water at ebb tide, leaving sufficient water between it and the shore for boats to pass, although by its continued growth it subsequently extends to and connects with the shore, so as to leave no water between it and the shore at ebb tide. In this we think he is wrong. We think a mussel-bed over which the water flows at every tide can not properly be called an island. We think such formations constitute what are called flats; and, by virtue of the

ordinance of 1641–7 belong to the owner of the adjoining land, if within a hundred rods of high water mark and so connected with the shore that no water flows between them and the shore when the tide is out; and it was settled in *Moore* v. *Griffin*, 22 Maine, 350, that the owner of the adjoining land can maintain trespass *quare clausum fregit* against one who enters upon the flats and takes and carries away mussel-bed manure; that neither the ordinance of 1641–7, nor the common law, authorizes the taking of mussel-bed manure from the flats of another person between high and low water mark on tide waters.

> *Exceptions overruled.*
> *Judgment on the verdict.*

PETERS, C. J., DANFORTH, VIRGIN and SYMONDS, JJ., concurred.